OPINION
Wilford L. Webb appeals the Greene County Court of Common Pleas' judgment convicting him of retaliation and sentencing him to four years incarceration.
On May 29, 1998, Webb was indicted on the charge of retaliation, in violation of R.C. 2921.05(A). A jury trial was held on February 1, 1998, after which Webb was found guilty of the charge. The testimony at trial revealed that Fairborn Municipal Court Magistrate Beth Root had presided over a civil trial on March 20, 1998, in which Webb had sued his cousin, Ruby Williams, to regain $8,000 which he had loaned to her. Magistrate Root filed a decision on April 10, 1998 which had not been favorable to Webb. Thereafter, Webb filed objections to the magistrate's decision. During the pendency of his case, Webb often called and spoke with Mary E. Abner, a civil deputy clerk at the Fairborn Municipal Court Clerk's Office. Abner stated that because Webb had been proceeding pro se, he had demanded a lot of attention and care from the clerk's office. Abner testified that Webb would sometimes call or visit the clerk's office two or three times a week to talk to her, file a letter, ask for advice, or simply "vent" his frustrations.
On May 15, 1998, Webb telephoned Abner to express his frustrations with the court system. At that point, Abner noticed that Webb had been exhibiting a "pattern of general animosity" towards Magistrate Root. Abner recalled that approximately two weeks prior to May 15, 1998, Webb had made comments to Abner that "pregnant or no {sic} pregnant, the Magistrate would do well to make sure that her decision went in his favor." Abner also recalled Webb questioning her about how to "obtain justice" in Greene County, stating to her, "I guess you have to shoot somebody to get their attention," and informing Abner that he "had the means to do that." According to Abner, she explained the court system and procedures to Webb many times prior to May 15, 1998, but he had not understood that further decisions would be handled by a judge, and not by Magistrate Root.
On May 15, 1998, Webb called Abner again to express dissatisfaction with the court system. Webb discussed his frustration generally at first, but eventually narrowed his frustration to Magistrate Root and her actions specifically. He then stated that he would "shoot her between the eyes before he would let this case go against him." Abner testified that although he did not specify that he was speaking of Magistrate Root, it was clear to her that Webb was talking about Magistrate Root. Abner stated that the threat "frightened" her, so she followed court procedures and typed up a statement of the conversation and delivered it to William D. Litteral, Clerk of Courts.
Litteral testified that he had reviewed Abner's memo, and had discussed the situation with Magistrate Root. He and Magistrate Root spoke with Judge Catherine Barber, who testified that she had interpreted the situation very seriously and had considered Webb's statement to be a direct threat. Judge Barber recommended that Magistrate Root file a report with Fairborn Detective Andrew R. Stockton. Magistrate Root did file a report, and Webb was eventually charged with retaliation.
Webb was fishing when he was arrested by Highland County Sheriff Sergeant Joe Wise. Sergeant Wise testified that Webb had been very angry about being arrested, and had stated to Sergeant Wise that he had "nothing to live for and he was going to take one of them with him." Sergeant Wise testified that he had understood "one of them" to refer to either a judge or a magistrate from Greene County Courts, although he could not remember specifically about whom Webb was speaking. Sergeant Wise stated that he did not file a police report regarding Webb's threat, but for safety reasons, he did alert "Greene County" to Webb's threats.
Within the next several days, Webb posted bond and was released from jail. Detective Stockton, a victim witness advocate, and Magistrate Root decided that, for her protection, Magistrate Root should move into a hotel. She, her husband, and her two year old daughter left their home immediately and resided in a hotel for five days.
Webb provided the sole testimony for the defense. He stated that he had never threatened Magistrate Root. He claimed that the statement at issue had been directed toward his cousin, Ruby Williams, but that he had never intended to follow through with the threat because the result would be that he never would have obtained the money that she owed him. According to Webb, he had become friends with Abner during his communications with the clerk's office, but she was a "liar" for testifying that the statement he had made was toward Magistrate Root. At the conclusion of his testimony, Webb maintained his innocence and denied threatening Magistrate Root in any way, despite two letters produced by the State which Webb had written, which stated that "Beth Root needs to be punished."
On March 17, 1999, the trial court sentenced Webb to four years at the Ohio Department of Rehabilitation and Corrections. Webb now appeals, asserting three assignments of error.
I.
 When viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt[.]
Webb argues that the evidence produced at trial was insufficient to support his retaliation conviction. Sufficiency of the evidence is a question of law which tests the adequacy of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380,386. In considering a claim of sufficiency of the evidence, a reviewing court:
 [E]xamine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Additionally, because the trier of fact is in a better position to observe the witnesses' demeanor, gestures and voice inflection, the weight of the evidence and credibility issues are best resolved by the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus, 39 Ohio Op.2d 366, 367. Furthermore, it is important to keep in mind that in a sufficiency of the evidence analysis, we are bound to view the evidence in a light most favorable to the prosecution, not to Webb. Jenks, supra, at paragraph two of the syllabus. See, also, State v. Lambert (June 5, 1998), Montgomery App. No. 16667, unreported.
To determine if Webb's retaliation conviction was supported by the sufficiency of the evidence, we must examine if the State's evidence was such that, if believed, it would prove to the jury that Webb violated R.C. 2921.05(A), which states:
 (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant * * * who was involved in a civil or criminal action or proceeding because the public servant * * * discharged the duties of the public servant * * *.
Webb argues that the State failed to prove his comments were directed at Magistrate Root, and that he had the specific intent to retaliate.
In viewing the evidence in a light most favorable to the State, we find sufficient evidence does exist which proved Webb was speaking about Magistrate Root. Abner noted that during the several weeks prior to her conversation with Webb on May 15, 1998, Webb's animosity had been escalating towards Magistrate Root, and not just the court system in general. He had made some comments to her regarding Magistrate Root, stating "Pregnant or no {sic} pregnant, the Magistrate would do well to make sure that her decision went in his favor." Additionally, he had just received Magistrate Root's decision in his civil case, which was unfavorable to him.
Abner testified that Webb had called her on May 15, 1998 to express his anger with the court system and the way his civil case was proceeding. Just prior to the phone call to Abner, Webb had received an unfavorable decision from Magistrate Root in a civil case he had filed against a relative. Abner noted that during the May 15, 1998 telephone conversation, Webb had focused his animosity directly on Magistrate Root, then he had stated that he would "shoot her between the eyes before he would let this case go against him." Abner testified that she had had numerous conversations with Webb, and with the exception of the May 15, 1998 conversation, she had felt that Webb was simply "venting" his frustrations. She felt frightened about the May 15, 1998 conversation because she felt Webb was serious in his threat. She reported the conversation as a result of her concerns.
Additionally, to corroborate the State's theory that Webb had intended Magistrate Root as the focus of the statement, Sergeant Wise testified that on their way to the jail, Webb had made specific threats against a Greene County judge or a magistrate. Similarly, Sheriff Horst stated that Webb came into his office after posting bond, threatening to do Magistrate Root harm, and at one point stating to the Sheriff, "I'm going to have to kill her."Viewing the evidence in a light most favorable to the State, we find that evidence exists to prove Webb's statements were directed against Magistrate Root. We acknowledge that Webb did not directly use Magistrate Root's name in his threat, but there is evidence from Abner's testimony that the conversation surrounding the threat, and Abner's interpretation of the situation left her with the strong feeling that Webb was talking about Magistrate Root, and that Webb was serious in his threat.
Webb also argues that no evidence exists that he intended to threaten Magistrate Root because the threat was not made directly to Magistrate Root. As we stated in Lambert, supra, however, the retaliation statute does not require that the threat of harm be communicated directly by the threatening person to the person being threatened. In that case, Lambert conveyed his threats to an employee of a women's shelter against an ex-girlfriend whom he knew had contact with the shelter, and whom had a block on her phone rendering it impossible for Lambert to call her from the county jail. Despite Lambert's failure to communicate any direct threats to his ex-girlfriend, we found that sufficient evidence existed that he had intended the threats for his ex-girlfriend.
In this case, Magistrate Root testified that she had encountered Webb in the lobby of the court's building one week after filing her April 10, 1998 decision. At that time, Webb expressed to her his negative feelings regarding that decision, and she explained that she could no longer speak to him about the case because the substantive portion of the case was still pending. Knowing that he could not speak directly to Magistrate Root, Webb thus made regular contact with the Clerk's Office, and made the threat to Abner. We believe that Webb's communication of his threat to Abner was sufficient evidence that he had intended the threat for Magistrate Root, especially as Webb had originally initiated personal contact with Magistrate Root.
Accordingly, we find sufficient evidence does exist in the record to support the jury's verdict. Webb's first assignment of error is overruled.
II.
 Even though no objection was made at trial, when the state presents evidence and testimony so prejudicial and inflammatory it is plain-error and creates a grave miscarriage of justice[.]
Webb argues that it was plain error for the trial court to allow the introduction of testimony by the two peace officers from Highland County regarding Webb's threatening statements directed at Magistrate Root, as they were not made in conformity with Evid.R. 404(B). Specifically, Webb argues that there was no connection between the statements he made to the officers and the threat at issue. Additionally, Webb argues that the testimonies of Magistrate Root, Litteral, and Judge Barber, regarding their reactions to Abner's conversation with Webb, were highly prejudicial and irrelevant to proving the case against Webb. Finally, Webb argues that the prosecutor's statements during closing arguments were highly inflammatory, and that Webb was unduly prejudiced as a result.
Initially, a review of the transcript reveals that defense counsel failed to specifically object to any of the testimonies which Webb now complains should have been excluded at trial. Therefore, any challenge to the admissibility of the testimonies in question must be analyzed under a plain error standard. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. Statev. Long (1978), 53 Ohio St.2d 91.
Evid.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
According to the Staff Notes to Evid.R. 404(B), the list of justifiable purposes for the admission of evidence of other acts is neither exclusive nor exhaustive. Thus, a party may introduce evidence of other acts, even though the purpose for its admission is not listed in Evid.R. 404(B), so long as it is not used to show conformity to a character trait.
After a careful review of the transcript, we cannot say that the trial court erred in allowing the officers to testify to Webb's statements. Sergeant Wise's testimony that Webb was angry and that he had "nothing to live for and he was going to take one of them with him" indicating a judge or a magistrate, was evidence of Webb's intent of retaliation against court personnel and was evidence of a plan to retaliate against Magistrate Root for ruling against him. The statement contradicts Webb's testimony that he had made the statement to Abner that he would "shoot her between the eyes before he would loose {sic} her in that crooked court." It is clear that Sergeant Wise's testimony was not introduced to prove conformity with a character trait, but instead was addressing an issue of the trial, and thus conformed with a justifiable purpose of other acts under Evid.R. 404(B).
Similarly, the trial court properly admitted Webb's conversation with Sheriff Horst. Webb, angry at having been arrested, stated to Sheriff Horst that he had been upset with Magistrate Root and that he was going to have to harm Magistrate Root, specifically stating, "I'm going to have to kill her." These statements were evidence to establish Webb's purposeful intent and plan to harm to Magistrate Root, not Williams, which was an issue of the trial.
We further find that Abner's testimony explaining the circumstances surrounding the statement was sufficient evidence upon which to convict Webb of the retaliation charge. As such, we do not find that plain error occurred, for we cannot say that but for Sgt. Wise's testimony or but for Sheriff Horst's testimony, Webb would not have been convicted.
Webb also takes issue with the testimonies of Judge Barber, Magistrate Root, Litteral, and Abner's testimony regarding Webb's other statements. Webb claims that the other acts evidence introduced by these witnesses was highly prejudicial and inflammatory. To support his argument, Webb relies on our decision in State v. Renner (1998), 125 Ohio App.3d 383. InRenner, we reversed the trial court's decision based upon the State's introduction of "other acts" evidence that showed Renner was of bad character and had a bad attitude towards women. We found the "other acts" evidence was introduced to show that Renner had acted in conformity with the prior incidents. However, Webb even admits that Renner is not "expressly on point," but he argues that Renner applies because in this case, the prosecution "did employ highly prejudicial and inflammatory opening statements, paraded witnesses before the jury with irrelevant testimony and unfairly attacked the character of the Appellant." Specifically, Webb argues that the more-educated State's witnesses' testimonies of their reaction to Webb's threat was prejudicial, because it simply bolstered the State's witnesses' credibility in contrast to Webb's more "hillbilly" character. We do not agree with Webb's logic. To begin, we find that the only "other acts" testimony from any of these three witnesses was Abner's testimony regarding other similar statements Webb had made to her prior to the May 15, 1998 statement. We will note that the other witnesses' testimonies at issue were relevant to the State's case, and were not overly prejudicial. The testimonies were offered to counteract Webb's arguments that his threat was "no big deal," and that this was simply a situation where a litigant was unhappy with the outcome of a lawsuit. Magistrate Root and Judge Barber testified to their reactions of the threat, the precautions they exercised, and what kind of effect the threat had had on Magistrate Root and her family. The testimonies were relevant to describe the circumstances of the threat.
We also fail to see how these witnesses and their testimonies are similar to that in Renner. In Renner, we cautioned trial courts to be "more vigilant in restraining efforts to infuse cases with irrelevant character evidence." The prosecution in Renner
attacked the defendant's credibility, which resulted in an unfair trial. In this case, the witnesses at issue did not attack Webb's character. Although Abner did testify to "other acts" of Webb by describing previous, similar conversations she had had with Webb, we find that the trial court did not err in admitting these statements. The testimony was not introduced to attack Webb's character, as in Renner, but Webb's statements to Abner of his increasing anger towards Magistrate Root sought to prove a common scheme or plan and intent of Webb to threaten Magistrate Root. Furthermore, defense counsel did not object to the statements, and we cannot say that but for the introduction of such testimony, the outcome of the trial would have been different.
Finally, Webb argues that the State made "highly inflammatory and expressly misleading statements" in its opening and closing arguments when it restated the above-mentioned testimony. The prosecutor made the first comment at issue during opening arguments, when he stated that the evidence would show that Webb had said that "he was going to take a shotgun to the Magistrate." The prosecutor made the second comment at issue during closing arguments when he stated that Abner had testified to Webb telling her that "if he doesn't win this case or something to that effect, he's going to shoot Magistrate Root right between the eyes."
We find that the proper remedy for this portion of Webb's argument would be through the pursuit of a prosecutorial misconduct argument instead of through an Evid.R. 404(B) argument. We note, however, that Webb begins his first assignment of error with the statement "Appellate counsel does not wish this Court to infer any allegations of Prosecutorial misconduct by counsel. It is not an issue raised in this brief in this part or in any other part." Since Webb has admitted that he makes no allegations of prosecutorial misconduct, and because we see no evidence of prosecutorial misconduct in these two statements, we deny this portion of Webb's assignment of error. Additionally, we note that trial counsel failed to object to such statements during the trial, and we cannot find that these statements rise to plain error.
For the reasons stated above, Webb's second assignment of error is overruled.
 III. When trial counsel allows irrelevant, inflammatory and prejudicial evidence to be placed before the trier of fact, counsel's performance is seriously flawed and deficient to the prejudice of Appellant resulting in a trial that would have been different had counsel provided proper representation[.]
Webb argues ineffective assistance of counsel for trial counsel's failure to object to the introduction of the testimonies which he claimed as error in the previous assignments of error.
To show ineffective assistance of counsel, a defendant must prove that his trial counsel's representation fell below an objective standard of reasonableness and that the defendant was prejudiced by the deficient performance. Strickland v. Washington
(1984), 466 U.S. 668, 687-688; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. In order to show prejudice, the defendant must prove that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra, at 694.
In regard to this assignment of error, we have already found,supra, that the witnesses' testimonies at issue and the statements made by the prosecutor during opening and closing arguments were not improper. For these reasons, we also reject the argument that trial counsel acted deficiently in failing to object to the lines of testimony and the comments made during arguments.
As a final note, Webb argues ineffective assistance of counsel for his trial counsel's failure to conjure up a defense. Webb, however, offers no indication of what that defense could have been. Without Webb's insight into possible viable defenses, we refuse to designate trial counsel as "ineffective" for not creating a defense when it is not clear that one would have been available to him.
As such, Webb's third assignment of error is overruled.
 ___________________________ FREDERICK N. YOUNG, J.
GRADY, P.J. and BROGAN, J., concur.